IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sandra S. Goodman and )<br>Steven Goodman, )<br> )<br>      Plaintiffs, )<br> )<br>      vs. )<br> )<br>Revco Discount Drug Centers, Inc., )<br>a corporation; The Stanley Works, Inc., )<br>successor by merger to Stanley )<br>Technologies, I/P/A Stanley Inc., )<br>a corporation; Magic Door Inc.; Stanley )<br>Access Technologies; Stanley Magic- )<br>Door, Inc.; John Doe, Inc., all corporations; )<br> )<br>      Defendants. )<br>_____) | C/A No. 3:03-cv-2657-MBS<br><br>**<u>ORDER</u>** |

Plaintiff Sandra S. Goodman was injured when an automatic door at a CVS drug store in Sumter, South Carolina, closed on her as she was entering the store. Mrs. Goodman and her husband, Steven Goodman, bring this action alleging negligence, breach of warranty, and products liability against Defendants Revco Discount Drug Centers, Inc. ("Revco"); The Stanley Works, Inc.; Magic Door, Inc.; Stanley Access Technologies; Stanley Magic-Door, Inc. (collectively "Stanley"); and John Doe, Inc. (together collectively "Defendants"). Revco Discount Drug Centers, Inc. is a wholly-owned subsidiary of the CVS entities. Plaintiff Steven Goodman also asserts a cause of action for loss of consortium against Revco. This matter is before the court on both Defendant Revco and Stanley's motions to exclude the expert testimony of the Plaintiffs' expert, Joseph P. Straney, and for summary judgment. Stanley filed its motion on May 2, 2005. Revco filed its motion on May 3, 2005. Plaintiffs responded in opposition on May 20, 2005. This court heard oral argument on June 22, 2005.

**FACTS**

The facts, taken in the light most favorable to Plaintiffs, are as follows.  On August 17, 2000, Mrs. Goodman went to the CVS Pharmacy on Alice Drive in Sumter, South Carolina.  *See* Deposition of Sandra Goodman (p. 32, lines 9-23; p. 35, lines 6-16).  Mrs. Goodman testified that she parked her car on the right side of the store's entrance, came along the sidewalk, and took a right turn into the doors.  *See* Goodman Deposition (p. 35, line 20 to p.36, line 22; p. 100, line 24 to p. 101, line 10).  Mrs. Goodman was entering the store four or five feet behind other customers when she was hit on her right side by the automatic doors.  *See* Goodman Deposition (p.39, lines 3-5).  Mrs. Goodman is unable to recall if she fell to the ground but said she was in a "haze" and remembers "getting up from embarrassment and trying to get out of the way because [she] was so embarrassed that someone saw [the incident]."  *See* Goodman Deposition (p. 42, lines 8-14).  Mrs. Goodman felt pain in her right side and reported the incident to a cashier and the Assistant Manager, Ms. Katherine Faulling, who took Mrs. Goodman's information and filed a CVS General Liability Form.  *See* Plaintiffs' Exhibit 13 (CVS Incident Report).  Ms. Faulling also recorded the information of the only eyewitness to the incident, Ms. Linda Alston, a customer who was standing at a nearby register.

Subsequent to the incident, Mrs. Goodman underwent cervical spine fusion surgery at C3-4, C4-5 and C5-6 with interbody bone grafts, plates, and fixation screws at McLeod Regional Medical Center on June 6, 2001.  *See* Plaintiffs' Exhibit 18 (Dr. Krammer's Operative Note).  Mrs. Goodman has incurred medical expenses of approximately $79,162.85.  She has been unable to work and has lost nearly 5 years of wages and employment benefits.

**DISCUSSION**

**Defendants' Motion to Exclude Joseph P. Straney as an Expert Witness**

Plaintiffs propose to offer the testimony of Joseph P. Straney, an electrical engineer who has worked for both the United States military and private companies for 37 years. Mr. Straney has training and experience working with radar, sonar, and infrared sensor systems. Defendants argue that Mr. Straney should be excluded as an expert witness because he is not qualified to be an expert on automatic doors. The court agrees.

> As a threshold matter, a witness must be qualified as an expert by knowledge, skill, experience, training, or education. Courts have found that a proffered expert who is an engineer is not necessarily qualified to testify as an expert on any issue within the vast field of engineering . . . . To qualify as an expert, [the expert] must possess some special skill, knowledge, experience, training, or education concerning the particular issue or product before the court.

*Thompson*, 2002 WL 32345733 at *1.

Plaintiffs argue that Mr. Straney's opinions are based upon his education, training, and 37 years experience as an electrical engineer and upon well understood and universally recognized principles of science. While it is clear that Mr. Straney has knowledge of various sensor systems, he readily admits he has not worked specifically with automatic door or pedestrian systems. Although Mr. Straney may be a qualified engineer, the court concludes that Mr. Straney has no technical or specialized knowledge in automatic pedestrian door systems or a familiarity with the particular sensors used in relation to the bifold doors or its design. *See Shreve v. Sears, Roebuck & Co.,* 166 F. Supp. 2d 378, 392 (D. Md. 2001) (listing cases where courts have concluded that expert witnesses in one area does not automatically qualify as expert witness in another area).

3

Defendants further assert that, even if Mr. Straney were qualified as an expert in automatic doors, his scientific opinions are not reliable and do not meet the standard set by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). The court agrees.

Rule 702 provides:

Testimony by Experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the court's role in considering the admissibility of expert testimony is to assess whether the evidence is sufficiently reliable and relevant. *See Kumho Tire Co, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The focus of the court should be on the "principles and methodology" employed by the expert, and not on the conclusions reached. *See Daubert*, 509 U.S. at 594-95. Factors which may be considered are (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review or publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94). "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.,* 190 F.3d 244, 250 (4th Cir. 1999). Plaintiff, as the party offering the expert testimony, has the burden of showing by a preponderance of the evidence that the expert's testimony is admissible. *See Thompson v. Queen City, Inc.*, 2002 WL 32345733 at *1 (D.S.C. 2002); *see also Cooper v. Smith*

*& Nephew, Inc.,* 259 F.3d 194, 199 (4th Cir. 2001). An expert does not need to rule out all alternative causes for an injury, but he must explain why his opinion remains sound in light of alternative causes proposed by the other parties. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265-66 (4th Cir. 1999). Further, in South Carolina an expert cannot rely on the fact that an accident occurred in order to prove negligence. *See Thompson*, 2002 WL 32345733 at *3. As the South Carolina Court of Appeals has explained, "[t]he plaintiffs' burden of proof cannot be met by relying on the theory that the thing speaks for itself or that the very fact of injury indicates a failure to exercise reasonable care." *Reiland v. Southland Equip. Serv. Inc.,* 500 S.E.2d 145, 154-55 (S.C. Ct. App. 1998).

It appears from the record that Mr. Straney reviewed the depositions of Plaintiffs' eyewitness, Ms. Alston; the store managers; Stanley's Rule 30(b)(6) designee, Douglas J. Taylor, Sr.; and the Stanley service technicians. Mr. Straney also reviewed the Stanley Series SB600 Bi-Fold Door installation manual, owner's manual, and the installation manual for the SU 050 motion sensor system. He conducted a patent search for the OPTEX system; reviewed the architectural drawings for the CVS Southern Prototype store and other materials; reviewed the applicable ANSI standard, A156.10, 1999 edition; and reviewed the engineering reports submitted by the Defendants' experts. *See* Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, Exhibit 22 ("Straney Dep."), at p. 7, line 10 to p. 17, line 20. Mr. Straney also testified that he observed the operation of the same type of doors installed at other CVS Southern Prototype stores. *Id.* at p. 18, line 17 to p. 20, line 22. After Mr. Straney reviewed these various materials he issued his report. *See* Memorandum of Authorities in Support of Motion to Exclude Expert Testimony and for Summary Judgment, Exhibit G (Straney Report).

During his deposition, Mr. Straney offered multiple hypotheses concerning the malfunction of the automatic doors, including:  the plaintiff's clothes may have produced less energy for reflection to be picked up by the infrared sensors; there may have been too much dust on the lens of the sensor; the plaintiff's hat may have caused the IR beam not to reflect; an insect could have landed on the lens; a sensor reset malfunction occurred; there may have been cosmic ray interference; or lightning may have struck and caused an interference.  *See* Straney Dep.  at pg. 15, lines 2-5; pg. 26, lines 7-18; pg. 28, lines 12-18; pg. 37, lines 8-20; pg. 48-49, lines 11-1; pg. 47, lines 12-25.  Mr. Straney admitted during his deposition that, "[w]e don't know what went wrong [with the automatic door] but we know something went wrong with it" and "there was no way to say one possibility is more likely than the other."  *See id.* at pg. 102, lines  6-9.

Mr. Straney  named multiple possibilities of what may have happened during the incident; however, he failed to conduct any experiments or tests in order to narrow his list.  Mr. Straney produced a videotape of the automatic doors closing on him while he was standing in the doorway of a different CVS store located in Charleston; however, Mr. Straney failed to explain what caused the doors to close.  Causation cannot be proved and "a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by evidence such as test data or relevant literature in the field."  *Oglesby*, 190 F.3d at 249 (citing *Alevromagiros v. Hechinger Co.,* 993 F.2d 417, 422 (4th Cir. 1993)); see also *Free v. Bondo-Mar-Hyde Corp.*, 25 Fed. Appx. 170, 173 (4th Cir. 2002) (summary judgment appropriate where plaintiffs could no longer carry their burden of proof once their expert's testimony was excluded as speculative); *Phelan v. Synthes (U.S.A.),* 35 Fed. Appx. 102, 108 (4th Cir. 2002) (where expert admitted that he had neither examined nor performed any tests on tibial nails in forming his opinions and court concluded expert testimony was inadmissible).  Moreover, Mr. Straney's opinions are not based on any peer-reviewed

6

scientific materials. Mr. Straney was asked multiple times during his deposition whether he had found any research or studies to validate his opinions. Each time he replied in the negative. *See* Straney Dep. at pg. 32, line 5 through pg. 33, line 9.

An expert's testimony does not have sufficient indicia of reliability under *Daubert* where the expert's theory did not, "as a matter of logic . . . eliminate other equally plausible causes" of the incident in question. *See, e.g., Oglesby,* 190 F.3d at 250. The exclusion of an expert opinion is proper as to a cause of an accident when the expert admits that the cause is "not clear." *See O'Neill v. Windshire-Copeland Associates*, 372 F.3d 281 (4th Cir. 2004). *See also*, *Harris v. Rose's Stores*, 433 S.E.2d 905, 907 (S.C. Ct. App. 1993) (where the evidence reveals several possible causes of an accident, it is improper to allow the jury to guess which cause might have been a proximate cause). "[C]ourts must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 595). The court finds that Mr. Straney's testimony is speculative and lacks the sufficient indicia of reliability required by *Daubert*. Accordingly, Defendants' Motions in Limine to Exclude the Testimony of Joseph P. Straney are **GRANTED**.

**<u>Defendants' Motion for Summary Judgment</u>**

Defendants have moved for summary judgment pursuant to Rule 56, FRCP. Summary judgment "shall be rendered forthwith when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), FRCP. For the evidence to present a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242 (1986). The moving party has the burden of proving that there are no facts from

which it would be open to a jury to make inferences favorable to the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), FRCP. The opposing party may not rest on the mere assertions contained in the pleadings. *Id.* The court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus. Inc.*, 763 F.2d 604, 614 (4th Cir. 1985). The trial court should grant summary judgment against a party who has failed to make a showing sufficient to establish the existence of an essential element of that party's case. *Harris v. Rose's Stores, Inc.,* 433 S.E.2d 905, 906 (S.C. Ct. App. 1993). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Both Defendants Revco and Stanley assert that summary judgment is appropriate because Plaintiffs cannot meet their burden of proving the automatic doors at issue were defective or that any defective condition proximately caused Mrs. Goodman's injuries. A products liability case may be brought under several theories, including strict liability, warranty, and negligence. *See Bragg v. Hi-Ranger, Inc.,* 462 S.E.2d 321, 325 (S.C. Ct. App. 1995). In order to find liability under any products liability theory, the plaintiff must show: (1) she was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant. *See Madden v. Cox*, 328 S.E.2d 108 (S.C. Ct. App. 1985); *Harris v. Rose's Stores, Inc.,* 433 S.E.2d 905 (S.C. Ct. App. 1993). Under a negligence theory, the plaintiff bears the additional burden of demonstrating the defendant (seller or manufacturer) failed to exercise due care

8

in some respect, and unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault. *See Madden*, 328 S.E.2d at 112.

In a product liability action based on strict liability where a design defect is alleged, the plaintiff must prove the product, as designed, was in an unreasonably dangerous or defective condition. *Reed v. Tiffin Motor Homes, Inc.,* 697 F.2d 1192, 1196 (4th Cir. 1982). In determining if a product is defective and unreasonably dangerous, the South Carolina Supreme Court has held that while any product can be made safer, the fact that it is not does not automatically mean the product is unreasonably dangerous. *Claytor v. General Motors Corp.,* 286 S.E.2d 129, 132 (S.C.1982). Causation cannot be proved and a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by evidence such as test data or relevant literature in the field. *Oglesby*, 190 F.3d at 249.

In this case, the opinions upon which Plaintiffs rely are speculative and unsupported by test data or relevant literature. The court discerns no competent evidence that the doors at issue were defective and unreasonably dangerous as designed and manufactured by Stanley. Because Plaintiff has failed to establish that the product was in a defective condition, unreasonably dangerous to the user, Stanley's motion for summary judgment is **GRANTED** as to Plaintiffs' negligence, breach of warranty, and products liability claims against Stanley. In addition, Defendant Revco's motion for summary judgment is **GRANTED** as to Plaintiffs' breach of warranty and products liability claims against Revco.

## Negligence Liability as to Defendant Revco

Revco also asserts summary judgment is proper because there is no evidence that it failed to maintain and operate the automatic door in a reasonably safe manner. The court disagrees.

9

A cause of action for negligence requires (1) the existence of a duty on the part of the defendant to protect the plaintiff; (2) the failure of the defendant to discharge the duty; and (3) injury to the plaintiff resulting from the defendant's failure to perform. *South Carolina State Ports Authority v. Booz-Allen & Hamilton, Inc.,* 346 S.E.2d 324, 325 (S.C. 1986). A plaintiff may offer circumstantial evidence that a defendant acted negligently. *Sunvillas Homeowners Ass'n Inc. v. Square D Co.*, 391 S.E.2d 868, 870 (S.C. Ct. App. 1990).

The CVS store in question follows the architectural plans for the "CVS Southern Prototype Store" with the entrance to the store located across a corner of the building. The entrance has automatic bifold doors. The automatic doors are called the SB600 Series Bifold Door System and are manufactured by Defendant Stanley Works, Inc. *See* Plaintiffs' Exhibit 6 (Stanley Owner's Manual). The General Safety section of the Stanley Owner's Manual states that the pedestrian traffic patterns should be observed and planned so that "people enter and exit in a straight approach, directly into the center of the door opening." *See* Plaintiffs' Exhibit 6 (p.10). The American Association of Automatic Door Manufacturer's (AAADM) publishes the same safety recommendation in the sample owner's manual for automatic bifold doors. *See* Plaintiffs' Exhibit 9. The layout of the "CVS Southern Prototype Store" allows customers to approach the doors along the sidewalks leading up to the entrance from around the corners of the building.

The Stanley Owner's Manual contains several warnings stating that the doors should be inspected daily using the safety checklist that is contained within the manual. *See* Stanley Owner's Manual Exhibit 6 (p. 2). It further states that it is the owner's responsibility as caretaker of the equipment to inspect the operation of the door system on a daily basis at least once a day and after any power outages to ensure that it is safe for all users. *Id.* 3. Also, the "Operation and Daily Maintenance" section advises that the sensor lenses be wiped with a dampened cloth. *Id.* 5. The

10

Store Managers testified that they did not regularly clean the lenses, had never read or performed the daily safety check, and there is evidence the recommendation that barriers be erected to discourage pedestrians from entering the doors at an angle was disregarded. A reasonable jury could find that Revco had a duty to maintain the doors in accordance with the specifications outlined in the owner's manual, that it breached this duty, and that a foreseeable risk of injury existed as to customers entering or exiting the store if the automatic doors were not properly inspected and maintained.

Revco argues that the negligence cause of action should be dismissed because they were not put on notice of the dangerous condition, as is usually required in slip-and-fall negligence actions. The facts of this case are more closely aligned with *Force v. Richland Memorial Hospital*, 471 S.E.2d 714 (S.C. Ct. App. 1996). In *Force*, the electric sliding doors in the emergency room closed on plaintiff, severely injuring her right shoulder. In the litigation that followed, the plaintiff's representative alleged that the hospital failed to adequately inspect and maintain the automatic doors, despite the manufacturer's recommendation that the doors be subjected to regular maintenance, as well as the installer's advice that the doors be inspected and maintained daily. *See id.* at 715. A jury returned a verdict in favor of the plaintiff. Trial court set aside the jury verdict on motion of the hospital.

On appeal, the hospital, relying on slip-and-fall cases holding the owner of a store cannot be negligent if a customer is injured unless the store has actual or constructive notice of a substance on the floor, argued that the trial judge should be affirmed because it had no notice of the doors' defect. *Id.* The South Carolina Court of Appeals rejected the hospital's argument. The court of appeals noted that slip-and-fall cases are distinguishable from the facts presented in *Force* because

11

"the floor is generally considered safe, absent a foreign substance which renders it unsafe." *Id.* at

715. The court of appeals concluded that the jury verdict was proper because:

> the hospital undertook a duty to keep the doors safe by maintaining and inspecting them. It received guidance from the manufacturer and the installer concerning the level of maintenance necessary to keep the doors in safe working order. It clearly had notice the doors would become unsafe absent frequent maintenance and inspection. Furthermore, the hospital should have foreseen that inadequate inspection could result in a failure to detect a malfunctioning door, thus potentially causing an accident[.]

*Id.* at 715-16.

Similarly, in this case the manufacturer provided a manual setting forth recommendations concerning the maintenance and inspection of the automatic doors. In the court's view, genuine issues of material fact preclude summary judgment as to Plaintiffs' negligence cause of action against Revco. Accordingly, Revco's motion for summary judgment is **DENIED** as to this issue.

The court also denies Revco's motion to dismiss punitive damages at this time; however, Revco may reassert this claim after further development of the record.

## CONCLUSION

For the reasons stated, Defendants' motions to exclude Plaintiffs' expert are **granted**. Because Plaintiffs have failed to establish the existence of an unreasonably dangerous defective product manufactured or designed by Stanley, Defendants' motions for summary judgment are **granted** as to Plaintiffs' products liability and breach of warranty claims. For the same reason, Stanley's motion for summary judgment in regard to Plaintiffs' negligence claim against Stanley is **granted**.

Revco's motion for summary judgment in regard to Plaintiffs' negligence claim against Revco is **denied**. Plaintiff Steven Goodman's cause of action for loss of consortium also will remain in the case for resolution.

In their complaint filed August 14, 2003, Plaintiffs named as a defendant "John Doe, Inc., All Corporations."  Plaintiffs have neither identified nor served John Doe, Inc.  Fed. R. Civ. P. 4(m) allows the court to dismiss a party that, as in this case, has not been served within 120 days of filing the complaint.  Accordingly, the court dismisses Defendant "John Doe, Inc., All Corporations," without prejudice pursuant to Rule 4(m).

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

August 18, 2005.